# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Phone Number: (323) 900-9958<br>Belonging to: Juana GODINEZ<br>(Subject Account 1) | Case No.  '23 MJ0361 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated by reference herein.

located in the  Western  District of  Washington  , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 31 U.S.C. Sec. 5332(a) and (b) | Bulk Cash Smuggling Conspiracy |
| 18 U.S.C. Sec. 554(a) | Smuggling Goods |
| 18 U.S.C. 924(k) | Smuggling Firearms out of the United States to Promote a Felony |

The application is based on these facts:

See attached Affidavit, incorporated by reference herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Jamie J. Ramirez*
Applicant's signature

Jamie J. Ramirez, Task Force Officer, HSI
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by  telephone  *(specify reliable electronic means)*.

Date: 2/2/2023 @ 5:15 PM

Judge's signature

City and state: San Diego, California         Hon. Karen S. Crawford, U.S. Magistrate Judge
Printed name and title

# ATTACHMENT A-1

## Items to be Searched

T-Mobile hosts the electronic communication account associated with the telephone number 323-900-9958, that is the subject of this search warrant and search warrant application (the "**subject account 1**").

T-Mobile is an electronic communication service provider whose primary computer information systems and other electronic communications and storage systems, records, and data are located at 12920 SE 38th Street, Bellevue, Washington 98006.

# ATTACHMENT B

## Items to be Seized

I. Service of Warrant

The officer executing the warrant shall permit the Provider in Attachments A-1 through A-3, as custodian of the electronic files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

II. Items to be Seized

Agents shall seize the following records, data, and information covering October 1, 2022 to November 2, 2022, and maintained by the Provider for the subject account identified in Attachments A-1 through A-3:

A. Subscriber information, including:

 i. Names;
 ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
 iii. Local and long distance telephone connection records;
 iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
 v. Length of service (including start date) and types of service utilized;
 vi. Telephone or instrument numbers, including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");
 vii. Other subscriber numbers or identities; and
 viii. Means and source of payment (including any credit card or bank account number) and billing records.

B. Records and other information about past wire or electronic communications sent or received by the subject account, including:

 i. the date and time of the communication;

    ii.  the method of the communication;

    iii.  the source and destination of the communication, such as the source and destination telephone numbers (call detail records), email addresses, or IP addresses;

    iv.  Cell site locations and sectors for all outgoing and incoming voice, SMS, MMS, and Data communications

All information described above that constitutes evidence, fruits, contraband, and instrumentalities of violations of Title 18 United States Code, Section 554(a), Smuggling Goods from the United States; Title 18, United States Code, Section 371 – Conspiracy to Commit Bulk Cash Smuggling; Title 31, United States Code, Section 5332(a) and (b) - Bulk Cash Smuggling; Title 31, United States Code, Sections 5316(a)(1) and 5324(c) and (d) - Failure to File Reports on Exporting Monetary Instruments; Title 18 United States Code, Section 924(k) – Smuggling a Firearm out of the United States to Promote a Felony; and Title 18 United States Code, Section 932 – Straw Purchasing a Firearm involving the **Subject Accounts** during the period **October 1, 2022 to November 2, 2022**.

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Jamie J. Ramirez, being duly sworn, hereby state as follows:

## INTRODUCTION

1.  I submit this affidavit in support of an application for a search warrant for T-Mobile and its subsidiaries, headquartered at 12920 SE 38th Street, Bellevue, Washington 98006, as described in Attachments A-1 through A-3, to search the accounts associated with the following cellular telephone numbers:

Phone Number: (323) 900-9958

Belonging to: Juana GODINEZ

(hereinafter, **Subject Account 1**)


Phone Number: (702) 472-1026

Belonging to: Destiny ESQUIVEL

(hereinafter, **Subject Account 2**)


Phone Number: (702) 929-5950

Belonging to: Cesar David PIZ Corona

(hereinafter, **Subject Account 3**)

(collectively **Subject Accounts**)

for subscriber information, telephone toll data, and cell-site geo-location information from **October 1, 2022**, through and including **November 2, 2022**, as described in Attachment B.

2.  There is probable cause that these records and information constitute evidence of violations of federal criminal law by Juana GODINEZ and Cesar David PIZ Corona, namely violations of:

- Title 18 United States Code, Section 554(a), Smuggling Goods from the United States;

- Title 18, United States Code, Section 371 – Conspiracy to Commit Bulk Cash Smuggling;
- Title 31, United States Code, Section 5332(a) and (b) - Bulk Cash Smuggling;
- Title 31, United States Code, Sections 5316(a)(1) and 5324(c) and (d) - Failure to File Reports on Exporting Monetary Instruments;
- Title 18 United States Code, Section 924(k) – Smuggling a Firearm out of the United States to Promote a Felony; and
- Title 18 United States Code, Section 932 – Straw Purchasing a Firearm.

(collectively **Target Offenses**)

3. In addition, there is This affidavit and application are sought pursuant to Rule 41 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 2703(a), which applies to providers of electronic communication services in the form of cellular and wireless telephone service for the **Subject Accounts.**

4. The information contained in this affidavit is based on my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Subject Account, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## TRAINING AND EXPERIENCE

5. I am an Officer with the United States Customs and Border Protection (CBP) within the Department of Homeland Security. I have been a CBP Officer since June of 2005 having completed the CBP Officer academy at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. As a result of my training and experience as a CBP Officer, I am familiar with federal criminal and immigration laws. As part of this training, I attended criminal investigation training that included course studies in, among other things, criminal law, constitutional law, search and seizures, and courtroom

2

procedure. Since October of 2020, I have been assigned to the Homeland Security Investigations (HSI) Costa Pacifico Money Laundering Task Force, which is a multi-jurisdictional task force comprised of local, state and federal law enforcement tasked with the investigation of major money laundering, bulk currency and narcotics traffickers in and around San Diego County.

6. My current duties include the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. During my career I have made numerous arrests for various narcotics and bulk currency violations for both state and federal charges. In those arrests, I have conducted interviews of the arrested persons and their associates. I have gained a working knowledge and insight into the normal operational habits of narcotics and bulk currency traffickers, with particular emphasis on those who attempt to export undeclared US currency out of the United States into Mexico at the San Diego international ports of entry. I also have been involved in multiple narcotic investigations in a supporting role.

7. I have received training in investigating various violations of federal and state laws, including but not limited to, alien smuggling, narcotics smuggling/trafficking, weapons smuggling, and bulk currency smuggling. I have worked with other law enforcement officers from various agencies and have gained knowledge and experience conducting these and other types of investigations.

8. As a Task Force Officer (TFO), I regularly engage in observations, surveillance, searches, records analysis, apprehensions, criminal and administrative evidentiary seizures, and the preparation of criminal and administrative cases for prosecution.

9. Through the course of my career, trainings, investigations, and conversations with other law enforcement personnel, I am made aware it is common practice for narcotic and money traffickers to work in concert with other individuals, and to do so by utilizing cellular telephones and portable radios to maintain communications with co-conspirators

to further their criminal activities. This is the case for any organization involved in the smuggling, trafficking, movement, or distribution of illicit commodities, whether they be human cargo, controlled substances, or other goods. Typically, organizations smuggling across the border, or to the interior from the border, are in telephonic contact with co-conspirators immediately prior to, during, and following the smuggling event. These communications typically consist of instructions on how/where to cross or pick up drugs or money, directions of travel, and locations for delivery to stash houses.

10. The smuggling of undeclared US Currency and narcotics generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages, text messaging (via SMS or other applications), and names (or aliases) and phone numbers of co-conspirators. For example, drivers responsible for transporting undeclared US currency are typically in telephonic contact with co-conspirators immediately prior to and/or following picking up the contraband and immediately prior to and/or crossing the border, at which time they receive instructions, including where to drop off the US currency. These communications may also include locations for delivery to stash houses and/or sponsors. It is common for traffickers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

## FACTS SUPPORTING PROBABLE CAUSE[1]

11. At approximately 3:36 AM on November 2, 2022, a San Diego Sheriff's Office Detective conducted a vehicle traffic stop on a red 2017 Nissan Sentra bearing Nevada license plate 213V22. The Detective conducted the traffic stop after observing the vehicle traveling at a speed greater than the posted speed limit, a violation of California Vehicle Code Section 22349(a). The traffic stop occurred on the southbound lanes of

---

[1] A GPS tracker was placed in GODINEZ's vehicle on October 13, 2022, after obtaining a state search warrant. Nothing in this affidavit relies on information obtained from that GPS tracker.

4

Interstate 805, just prior to the Camino De La Plaza exit, which is the last exit before the San Ysidro, California Port of Entry (POE).

12. The San Diego Sheriff's Office Detective approached the Nissan Sentra and made contact with the driver and registered owner of the vehicle, GODINEZ. GODINEZ was accompanied by Cesar David PIZ Corona ("PIZ Corona") sitting on the front passenger seat; Destiny ESQUIVEL ("ESQUIVEL") sitting in a rear passenger seat and one juvenile male sitting in the other rear passenger seat. In response to the Detective's questions, GODINEZ stated she was traveling to Mexico and did not have anything to declare. The Detective asked GODINEZ if they could search her vehicle. GODINEZ initially provided consent to search but revoked consent upon seeing a Customs and Border Protection (CBP) Canine Enforcement Officer (CEO) arrive on scene.

13. At approximately 3:40 AM, the CEO arrived and approached the vehicle. The CEO ran her assigned Narcotic Detection Dog on the outside of the vehicle and observed the dog alert to the rear of the vehicle.[2] The canine is trained and annually certified to detect odors from narcotics and concealed humans. Following the alert, the CEO inspected the trunk area of the vehicle and discovered several cellophane wrapped packages wrapped in silver duct tape in the rear quarter panels of the trunk. GODINEZ and the passengers of the Nissan Sentra were immediately detained and transported to the San Ysidro POE where a full search of the vehicle was conducted.

14. A full search of the vehicle resulted in the discovery of approximately thirty-three packages of bulk currency and two firearms. The currency was concealed in both passenger and driver side rear quarter panels and in a non-factory compartment located in the front driver and passenger floor areas. The firearms (a Springfield Armory XDm 9mm handgun with serial number BA664637 and a Beretta M9 with serial number BM051250) were located in the passenger rear quarter panel. The firearms were wrapped in green

---

[2] Based on my training and experience, cash is routinely cross contaminated with narcotics and the Narcotic Detection canine will detect the odor of narcotics on the currency

plastic, completely covered in black electrical tape and intermingled with several currency bundles.

15. The packages contained over 60 one-inch stacks containing $10, $20, and $100 denominations of U.S. currency The estimated total currency found in the vehicle is approximately $300,000 USD, which far exceeds $10,000.

16. GODINEZ, PIZ Corona and ESQUIVEL were placed under arrest at approximately 4:15 AM.

17. During a post-Miranda interview, ESQUIVEL initially claimed having no knowledge of bulk currency in the vehicle but later stated, before they left their home in Las Vegas, Nevada, she overheard PIZ Corona telling GODINEZ that they would take money to Mexico.

18. During a post-Miranda interview, PIZ Corona admitted being the owner of the two firearms found concealed in the rear-quarter panels of the vehicle. PIZ Corona admitted that he loaded the firearms into the rear quarter panel of the vehicle while GODINEZ watched. PIZ Corona stated he intended to transport the two firearms out of the United States into Mexico and admitted to knowing it was illegal to export firearms out of the United States. PIZ Corona did not provide an export license for the firearms. PIZ Corona also stated he knew there is a requirement to declare money over $10,000 when leaving the United States to Mexico.

19. A Law Enforcement Database records query confirmed the two firearms found in the vehicle were purchased by PIZ Corona on October 18, 2022 from a Sportsman's Warehouse located on 5647 Centennial Center Blvd, Las Vegas, Nevada 89149. Per the transaction request PIZ Corona picked up the firearms on October 26, 2022.

20. PIZ Corona provided consent to search his cellphone. During a review of PIZ Corona's cellphone, there was a WhatsApp conversation with an individual named "Jerry" regarding instructions to travel to Chicago and an address in Chicago. In addition, there were multiple conversations with unsaved numbers discussing what appeared to be

currency pickups. In addition, there were photographs on PIZ Corona's cellphone of dollar bills and a photograph of bulk US currency, separated in stacks with rubber bands.

21. According to Law Enforcement records, the Nissan Sentra bearing Nevada license plate 213V22, was registered to GODINEZ since August 18, 2022.

22. Based on all of these facts, and my training and experience, I believe GODINEZ and PIZ Corona were using the subject phones and the **Subject Accounts** to further illegal smuggling activities of US currency and firearms. Moreover, I believe additional information regarding GODINEZ's and PIZ Corona's use of the phone and **Subject Account** exists and contains evidence of GODINEZ's and PIZ Corona's and others' violations of law, as set forth herein and in Attachment B.

23. Based on my training and experience and consultation with other law enforcement agents, I believe that historical geolocation data from the **Subject Accounts** used may identify travel to or locations involved in the bulk case smuggling and firearm smuggling and may assist in identifying co-conspirators.

24. Based on my training and experience, and my consultation with other law enforcement officers, I am aware that T-Mobile routinely collects and stores data for the electronic communication accounts to which it and other providers issue telephone numbers. The data includes: (i) subscribers' contact and billing information; (ii) detailed information concerning subscribers' incoming and outgoing telephone calls; (iii) detailed information concerning subscribers' outgoing direct calls, text message, and SMS messages; and (iv) detailed information concerning cell-site geo-location data.

25. In particular, I know that cell phones connect to a provider's network through cell towers or cell sites. The particular tower or site may change as a phone moves from one location to another. Providers automatically record and retain this connection data as part of the **Subject Accounts**. Records and data identifying the towers or sites to which a phone connected therefore tend to identify the phone's and phone user's location at particular times.

26. I also know that different providers use the speed with which signals travel between cell phones and cell towers ("per call measurement data," or "PCMD"), as well as other data, to better calculate and record the location of phones accessing their networks. Different providers may use different terminology to describe PCMD. For example, T-Mobile has referred to the resulting location data as "timing advance" data; AT&T, as "NELOS" data; Verizon, as "Real Time Tool" or "RTT" data; and Sprint, as PCMD.

27. This application requests such per call measurement data (by whatever name the provider uses) for the Subject Accounts for the following date range: **October 1, 2022, to November 2, 2022**.

28. Based on the facts set forth above, I seek a warrant to search the Subject Accounts for the records and information in Attachment B.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

29. Aside from the search of the subject phone and subpoenaed phone tolls discussed above, I am unaware at this time of other attempts by the government to obtain the data sought in this warrant by other means.

### CONCLUSION

30. Based on the foregoing, there is probable cause to believe that the **Subject Accounts** to be seized, as set forth above and in Attachments A-1 through A-3, will be found at the location described in Attachments A-1 through A-3 and will contain evidence of violations of the **Target Offenses** as set forth in Attachment B.

I swear the foregoing is true and correct to the best of my knowledge, information, and belief.

*Jamie J. Ramirez*
Jamie J. Ramirez
Task Force Officer
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 2nd day of February 2023.

Hon. Karen S. Crawford
United States Magistrate Judge